# In the United States Court of Federal Claims

No. 15-1555C

(Filed: August 24, 2016)

| | |
|---|---|
| SEH AHN LEE, et al., | Claims for civilian pay and breach of contract; Back Pay Act, 5 U.S.C. § 5596; absence of appointment to the civil service; implied contract precluded by an express contract dealing with the same subject; dismissal pursuant to RCFC 12(b)(1) and (6) |
| Plaintiffs, | |
| v. | |
| UNITED STATES, | |
| Defendant. | |

John P. Pierce, Themis PLLC, Washington, D.C., for plaintiffs.  With Mr. Pierce at the hearing and on the briefs were David L. Engelhardt and Michael Cone, Themis PLLC, Washington, D.C.

Hillary A. Stern, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant.  With her at the hearing was Elizabeth Parish, Interim General Counsel, Broadcasting Board of Governors, Washington, D.C.  With Ms. Stern on the briefs were Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Civil Division, and Robert E. Kirschman, Jr., Director, and Steven J. Gillingham, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C.

**OPINION AND ORDER**

LETTOW, Judge.

Plaintiffs Seh Ahn Lee, Irina Ryan, Ahmad Nariman, and Mark Peach claim they are entitled to civilian pay and damages for breach of contract, alleging that the Broadcasting Board of Governors ("Broadcasting Board" or the "Board"), an independent agency of the United States (the "government"), denied plaintiffs full compensation and benefits for their work as contractors for the agency.  Plaintiffs assert that although they were hired by the Broadcasting Board as purchase order vendors (or nonpersonal service contractors), they were in reality acting in the capacity of personal service contractors.  Plaintiffs assert that they should be awarded monetary relief under the Back Pay Act, 5 U.S.C. § 5596, for certain wages, benefits, and tax payments to which they would have been entitled if their contracts had been properly classified as personal service contracts.  Alternatively, plaintiffs claim they should receive monetary damages as a result of the government's breach of an implied contract for compensation commensurate with their services in the capacity of personal service contractors.  Plaintiffs have included class allegations in their complaint and amended complaint, contending that

"approximately 660 persons [at the Board] have been providing personal services by means other than by federal appointment at any given time, including at present." Am. Compl. ¶ 102, ECF No. 7.  In that connection, plaintiffs have filed a motion to certify a class of persons who are said to have worked in the capacity of personal service contractors.  Pls.' Mot. to Certify Class, ECF No. 17.

Pending before the court is the government's motion to dismiss plaintiffs' complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC").  Regarding plaintiffs' civilian pay claim, the government asserts that plaintiffs have failed to state a valid claim for relief because the Back Pay Act only applies to government "employees" as defined by 5 U.S.C. § 2105(a), and plaintiffs have not alleged they fall within this defined group.  Def.'s Mot. to Dismiss ("Def.'s Mot.") at 7-8, ECF No. 12.  Regarding plaintiffs' breach of contract claim, the government argues that this court lacks subject matter jurisdiction because, under the Contract Disputes Act ("CDA") of 1978, recodified at 41 U.S.C. §§ 7101-7109, plaintiffs must first submit a claim to the appropriate contracting officer, and they have not done so.  Def.'s Mot. at 5-7.

The motions have been briefed and were addressed at a hearing on August 16, 2016.  For the reasons discussed, the government's motion to dismiss plaintiffs' complaint is GRANTED, and plaintiffs' motion to certify a class is DENIED as moot.

## BACKGROUND

The Broadcasting Board was established in 1994 to streamline management of the government's international broadcasting activities through organizations such as Voice of America, Radio Free Europe, and Radio Martí.  *See* United States International Broadcasting Act of 1994, Pub. L. No. 103-236, §§ 301-15, 108 Stat. 382 (1994) (codified at 22 U.S.C. §§ 6201-16); *see also* Am. Compl. ¶ 21; 5 U.S.C. § 104(1).  The Board initially operated as part of the United States Information Agency, but it became an independent government agency in 1999 under the general oversight of the Secretary of State, who serves as one of the nine voting members of the Board.  *See* Omnibus Consolidated and Emergency Supplemental Appropriations Act of 1999, Pub. L. No. 105-277, § 1323, 112 Stat. 2681 (1998).

Plaintiffs are four individuals who provided services to various elements of Voice of America – an organization within the Broadcasting Board – either directly through individual purchase order vendor contracts or as independent subcontractors to staffing agencies under prime contracts with the Board.  Am. Compl. ¶¶ 22-25.  Mr. Lee is a naturalized U.S. citizen from South Korea who has worked as a contractor for nearly 13 years, including under a subcontract with Technologist, Inc.  Am. Compl. ¶ 22.  Ms. Ryan is a naturalized U.S. citizen from Russia who has worked as a contractor for approximately nine years, including through a subcontract with Computer Technology Services, Inc.  Am. Compl. ¶ 23.  Mr. Nariman is a naturalized U.S. citizen from Iran who formerly worked as a contractor for approximately six years from 2007 to 2013.  Am. Compl. ¶ 24.  Mr. Peach is a U.S. citizen who has worked as a contractor for approximately eight years.  Am. Compl. ¶ 25.  As noted earlier, plaintiffs allege that approximately 660 potential class members served under similar contracts with the Board.  Am. Compl. ¶ 9.

In 2013, the Department of State's Office of Inspector General ("OIG") conducted an audit of the Board's Office of Contracts "to evaluate whether [the Board] had adequate acquisition policies and procedures and to assess the efficacy of those policies and procedures." Pls.' Opp'n to Def.'s Mot. to Dismiss ("Pls.' Opp'n") Ex. A, at 1 (Audit of the Broadcasting Board of Governors Administration and Oversight of Acquisition Functions (June 2014) ("OIG Report")), ECF No. 15-2.  As a result of its audit, OIG concluded that, among other things, the "[Board] awarded contracts that were personal in nature, resulting in [the Board] exceeding its statutory authority to award personal service[] contracts."  *Id.*  In its analysis, OIG used the definition of a personal service contract in 48 C.F.R. (Federal Acquisition Regulations, or "FAR") § 37.104(a), which states that such a contract "is characterized by the employer-employee relationship it creates between the [g]overnment and the contractor's personnel."  *Id.* at 10.  OIG looked to the following six factors outlined in FAR § 37.104(d) to assess whether certain Broadcasting Board contracts were personal service contracts:

(1) Performance on site.
(2) Principal tools and equipment furnished by the [g]overnment.
(3) Services are applied directly to the integral effort of agencies or an organizational subpart in furtherance of assigned function or mission.
(4) Comparable services, meeting comparable needs, are performed in the same or similar agencies using civil service personnel.
(5) The need for the type of service provided can reasonably be expected to last beyond one year.
(6) The inherent nature of the service, or the manner in which it is provided reasonably requires directly or indirectly, [g]overnment direction or supervision of contractor employees in order to –
    (i)   Adequately protect the [g]overnment's interest;
    (ii)  Retain control of the function involved; or
    (iii) Retain full personal responsibility for the function supported in a duly authorized [f]ederal officer or employee.

*Id.* at 10-11 (quoting FAR § 37.104(d)) (correcting typographical errors in the quotations as stated in the OIG report).

OIG noted that the FAR generally prohibits personal service contracts "without explicit statutory authority."  OIG Report at 10 (citing FAR § 37.104(b)).[1]  In terms of the Broadcasting Board's contracting efforts, the Foreign Relations Authorization Act, Fiscal Year 2003, Pub. L. No. 107-228, § 504, 116 Stat. 1350 (2002) (codified at 22 U.S.C. § 6206 note) established a pilot program in which the Director of the International Broadcasting Bureau (an office within the Broadcasting Board) is authorized to hire up to 60 "United States citizens or aliens" under

---

[1]The pertinent regulation states: "The [g]overnment is normally required to obtain its employees by direct hire under competitive appointment or other procedures required by the civil service laws.  Obtaining personal services by contract, rather than by direct hire, circumvents those laws unless Congress has specifically authorized acquisition of the services by contract." FAR § 37.104(a).

personal service contracts not to exceed two years in duration. *Id.* at 10 & n.13.[2]  OIG found that, "[b]ased on an estimate provided by an agency official," during the pertinent time (fiscal years 2011 and 2012), the Broadcasting Board "awarded approximately 660 services contracts that may have been personal in nature, 44 of which, according to [Board] officials, were appropriately classified as [personal service contracts]." *Id.* at 10; *see also id.* at 75 (defining the scope of OIG's analysis of the Board's domestic contracts).  OIG also performed its own analysis in which it "selected and reviewed 23 service[] contracts and found that 13 were labeled as nonpersonal service[] contracts, 5 were identified as [personal service contracts], 2 were identified both as a [personal service contract] and a nonpersonal service[] contract, and 3 had no indication of whether they were personal or nonpersonal service[] contracts." *Id.* at 11-12 (footnotes omitted).  Of the 16 contracts that were either identified as nonpersonal service contracts or not classified, OIG determined that at least 14 should have been classified as personal service contracts under the criteria in FAR § 37.104(d).  *Id.* at 12-14.  By extrapolating from this sample of contracts, OIG "concluded that [the Board] likely exceeded the statute's limit on the number of [personal service contracts] employed by awarding an overwhelming majority of all services contracts as nonpersonal service[] contracts, though they were personal in nature." *Id.* at 15.[3]

The Broadcasting Board disagreed with OIG's determination that it had exceeded its statutory authority, asserting that the contracts in question were not personal service contracts but rather "purchase order vendor" contracts, which are not subject to the same limitations.  OIG Report at 16-17; *see also id.* at 94-96 (Letter from Richard M. Lobo, Director, International Broadcasting Bureau, to Steve A. Linick, Inspector General, Department of State (Nov. 22, 2013)).  Nevertheless, the Board indicated that it would move away from entering into purchase order vendor contracts and instead use staffing agencies that would subcontract for the requisite services to alleviate the concerns raised in the OIG report.  OIG Report at 17.  The Board also stated that it would "reissue clear guidance to each manager about the distinction between independent contractors and personal service[] contractors." *Id.*

---

[2]Under the terms of the statute, this pilot program was to "terminate on December 31, 2005," and all contracts under the program were to remain in effect no longer than six months beyond this date.  22 U.S.C. § 6206 note, subsection (c).  According to the OIG report, "[t]his provision [of the authorization act] was extended each year via appropriations bills or continuing resolutions, keeping the authority in effect through September 30, 2014." OIG Report at 11.  At the hearing held on August 16, 2016, the court was advised that this authorization remains in effect.  Hr'g Tr. 7:5-14 (Aug. 16, 2016) (The date will be omitted from further citations to the transcript of the hearing.).

[3]OIG also concluded that the Broadcasting Board did not comply with certain procedural requirements of the personal service contract pilot program, observing that some of the contracts exceeded two years in duration, and, in certain cases, the Director of the International Broadcasting Bureau did not directly approve the contract, nor did he or she make the required "determination that personnel resources were insufficient or that the need was not permanent." OIG Report at 14-15 (citing 22 U.S.C. § 6206 note, subsection (b)).

Plaintiffs filed their original complaint on December 21, 2015, followed by an amended complaint on March 7, 2016.  Specifically, they allege that their contracts with the Broadcasting Board, as well as those of other potential class members, fall within the type of contracts that, according to the OIG's analysis, should have been classified as personal service contracts.  Am. Compl. ¶¶ 73-78.  Accordingly, plaintiffs allege that they are entitled to additional compensation and benefits – including rates of pay commensurate with the General Schedule rates applicable to federal employees, paid leave and holidays, retirement and insurance benefits, and certain tax-related benefits – that are provided to personal service contractors under internal Department of State rules and the rules of similar agencies.  Am. Compl. ¶¶ 85-93.  Plaintiffs advance two alternative claims that they are entitled to monetary relief: (1) that they are entitled to back pay and other monetary relief under the Back Pay Act and related statutes and regulations, Am. Compl. ¶¶ 94-98, 108-15; and (2) that they are entitled to monetary damages because the government has breached implied contracts with plaintiffs to compensate them in the same manner as contractors performing under actual personal service contracts, Am. Compl. ¶¶ 116-26.

## ANALYSIS

### A.  *Count One: Plaintiffs' Claim for Monetary Relief Under the Back Pay Act*

In its motion to dismiss, the government argues that Count One of plaintiffs' complaint should be dismissed for failure to state a claim upon which relief can be granted under RCFC 12(b)(6) because they have not alleged that they are or were "employees" of the federal government within the meaning of the Back Pay Act, 5 U.S.C. § 5596.  Def.'s Mot. at 7-8.  The Back Pay Act authorizes the payment of previously earned wages to "[a]n employee of an agency who, on the basis of a timely appeal or an administrative determination . . . is found by an appropriate authority under applicable law, rule, regulation, or collective bargaining agreement, to have been affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of the pay, allowances, or differentials of the employee."  5 U.S.C. § 5596(b)(1).  For the purposes of Title 5 of the United States Code, an "employee" is defined as "an individual who is . . . appointed in the civil service" by a federal employee acting in an official capacity.  5 U.S.C. § 2105(a)(1).  The government argues that although plaintiffs claim they were providing "personal services" to the government "in the manner of federal employees," *e.g.*, Am. Compl. ¶ 4, they do not allege they were ever actually appointed to the civil service, Def.'s Mot. at 7-8.  Therefore, the government asserts that plaintiffs have failed to state a cognizable claim under the provisions of the Back Pay Act.  *Id.*

The court agrees that Count One of plaintiffs' amended complaint must be dismissed, but for a more fundamental reason.  Before the court can consider whether plaintiffs have stated a claim upon which relief can be granted under RCFC 12(b)(6), the court "must first consider whether jurisdiction is proper."  *Herrmann v. United States*, 124 Fed. Cl. 56, 67 n.18 (2015) (citing *Greenlee Cnty. v. United States*, 487 F.3d 871, 876 (Fed. Cir. 2007); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir. 1988)); *see also Mendoza v. United States*, 87 Fed. Cl. 331, 335 (2009) ("Only after completing this initial jurisdictional inquiry will the court address the specific question of whether the facts in the plaintiffs' case [state a claim upon

which relief can be granted].").[4]  In this instance, plaintiffs invoke this court's jurisdiction under the Tucker Act, which grants the court "jurisdiction to render judgment upon any claim against the United States founded . . . upon the Constitution, or any Act of Congress or any regulation of an executive department."  28 U.S.C. § 1491(a)(1); *see also* Am. Compl. ¶ 17 (invoking this court's jurisdiction under the Tucker Act).  However, the Tucker Act alone cannot serve as a basis for this court's jurisdiction; a plaintiff also "must identify a separate source of substantive law that creates the right to money damages."  *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc in relevant part).  The Back Pay Act can serve as such a "money mandating" statute when it is invoked as a basis for monetary relief for "violations of [other] statutes or regulations covered by the Tucker Act."  *Mendoza*, 87 Fed. Cl. at 335 (quoting *Worthington v. United States*, 168 F.3d 24, 26 (Fed. Cir. 1999)); *see also United States v. Connolly*, 716 F.2d 882, 887 (Fed. Cir. 1983) (en banc) (the Back Pay Act "is merely derivative in application," and therefore must be coupled with allegations of other violations of statutes or regulations within the purview of the Tucker Act).  Nonetheless, the Court of Federal Claims has jurisdiction under the Back Pay Act only for claims of "presently due money damages."  *Todd v. United States*, 386 F.3d 1091, 1095 (Fed. Cir. 2004).  "[T]he long-standing rule [is] that 'one is not entitled to the benefit of a position until he has been duly appointed to it.'"  *Id.* at 1095 (quoting *United States v. Testan*, 424 U.S. 392, 402 (1976)).  That rule applies "even though he may have performed the duties of another position or claims that he should have been placed in a higher grade."  *Testan*, 424 U.S. at 406.  Without first obtaining the appointment, such a plaintiff has no claim for "presently due" money, and the court must dismiss the case for lack of jurisdiction.  *Caraway v. United States*, 123 Fed. Cl. 527, 533 (2015) (citing *Todd*, 386 F.3d at 1095) (dismissing a case for lack of jurisdiction when plaintiffs alleged that they should have been promoted), *appeal pending*, No. 16-1322 (Fed. Cir.).

In connection with their Back Pay Act claim, plaintiffs allege that the Broadcasting Board violated numerous statutes, regulations, and internal agency rules pertaining to compensation for federal employees and contractors.  Am. Compl. ¶¶ 85-93, 115 (citing various sections of Titles 5, 21, and 29 of the United States Code, which pertain to employee compensation and tax contributions, as well as sections of Titles 5 and 48 of the Code of Federal Regulations, which apply to federal employees and contractors, respectively).  In this connection, plaintiffs must make "a nonfrivolous assertion that [they are] within the class of plaintiffs entitled to recover under the money-mandating source."  *Mendoza*, 87 Fed. Cl. at 335 (quoting *Jan's Helicopter Servs., Inc. v. Federal Aviation Admin.*, 525 F.3d 1299, 1307 (Fed. Cir. 2008)).  Because plaintiffs have invoked the Back Pay Act as the money-mandating statute, they must accordingly make a non-frivolous assertion that they fall within the class of individuals covered by the statute – in other words, "employees" defined under 5 U.S.C. § 2105(a) as individuals "appointed in the civil service."  *See Greenlee Cnty.*, 487 F.3d at 877 (finding the Court of Federal Claims had

---

[4]In its motion to dismiss, the government did not challenge the court's subject matter jurisdiction over Count One of plaintiffs' complaint.  *See* Def.'s Mot. at 5-6 (focusing its jurisdictional challenge under RCFC 12(b)(1) on Count Two of the complaint).  Nevertheless, "[s]ubject-matter jurisdiction may be challenged at any time by the parties or by the court *sua sponte*."  *Folden v. United States*, 379 F.3d 1344, 1354 (Fed. Cir. 2004) (citing *Fanning, Phillips, Molnar v. West*, 160 F.3d 717, 720 (Fed. Cir. 1998) ("[The court] therefore ha[s] a special obligation to satisfy [itself] of [its] own jurisdiction.")).

subject matter jurisdiction because the plaintiff had established it was a "unit of local government" within the meaning of the money-mandating statute pertinent in that case, *i.e.*, the Payment in Lieu of Taxes Act). Here, the plaintiffs allege that they were "never" appointed, Am. Compl. ¶¶ 10, 102, but that they "should have been," Am. Comp. ¶ 14. Because the plaintiffs acknowledge that they were not appointed to the civil service, they cannot invoke jurisdiction under the Back Pay Act. *See Todd*, 386 F.3d at 1095.

The court is not persuaded by plaintiffs' citation to FAR § 37.104(a), which states that a "personal service[] contract is characterized by the employer-employee relationship it creates between the [g]overnment and the contractor's personnel," Am. Compl. ¶ 33, nor by their related assertion that they "were providing personal services in the manner of federal employees," Am. Compl. ¶ 25.[5] This is not the same as alleging that plaintiffs were in fact appointed to the civil service during the relevant time period. In responding to the government's motion to dismiss, plaintiffs concede that they were not appointed to the civil service, but they assert that the government's "argument ignores the most important fact of the case: the [Broadcasting Board] used illegal contracts fraught with material misrepresentations to lure [p]laintiffs and [m]embers of the proposed [c]lass into providing personal services without the appointments to federal service to which they were entitled." Pls.' Opp'n at 10.[6] Plaintiffs further assert that "[n]o

---

[5]In full, subsections (a) and (b) of FAR § 37.104 state:

(a) A personal services contract is characterized by the employer-employee relationship it creates between the Government and the contractor's personnel. The Government is normally required to obtain its employees by direct hire under competitive appointment or other procedures required by the civil service laws. Obtaining personal services by contract, rather than by direct hire, circumvents those laws unless Congress has specifically authorized acquisition of the services by contract.

(b) Agencies shall not award personal services contracts unless specifically authorized by statute (e.g., 5 U.S.C. 3109) to do so.

FAR § 37.104(a), (b).

[6]Plaintiffs also assert that OIG determined that the Broadcasting Board engaged in "fraud," and that the Board has conceded this fraud. *See, e.g.*, Am. Compl. ¶ 62 ("The [Board] admitted that it deliberately mis-labeled contracts as if providing non-personal services in knowing violation of law to avoid paying the compensation that was due to [p]laintiffs and [c]lass [m]embers as providers of personal services."); Pls.' Opp'n at 1 ("The Inspector General uncovered the agency-wide frauds in 2014 . . . . The [Board's] leadership ultimately admitted the essential facts of this case."); *id.* at 4 ("Since at least 2010, the [Board's] leadership has known that its contracting officers were fraudulently labeling contracts for 'non-personal services' . . . . Internally, the [Board] admitted that these findings were not only correct, but were applicable to almost its entire roster of 660 contractors."). The record is not so categorical, however. The OIG report does not state that the Board engaged in fraud; it postulates that the Board's contracting officials "did not know the difference between personal and nonpersonal service[] contracts," or "may not have been fully aware of or properly trained on the proper

[c]ourt has issued a published decision that denies applicability of the [Back Pay] Act when the lack of federal appointment is due solely to the agency's fraud against its workers." *Id.* at 11.

Even if these allegations of intentional error on the government's part are taken as true, plaintiffs have cited no authority to establish that "fraud" in a contract, or in the inducement to a contract, would serve to convert a contract employee to a civil service appointee for the purposes of claiming entitlement to monetary relief under the Back Pay Act. *See Costner v. United States*, 665 F.2d 1016, 1020 (Ct. Cl. 1981) (finding that even when a particular type of contract with the government was "not legally authorized," "there is no implication that the proper remedy is retroactively to make [the contractors] employees" for the purposes of a claim under the Back Pay Act); *see also id.* at 1021 (declining to apply common law to determine whether an employer-employee relationship existed, observing that the requirements of the Back Pay Act are more stringent).[7]  The situation might be different if plaintiffs were alleging that when they

---

implementation and specific limitations of applicable statutes." OIG Report at 15. And, plaintiffs have not provided any evidence that the Board has conceded it committed fraud against its contractors. In its fifth and final response to the OIG report, the Board acknowledged that "it cannot employ personal services contractors in excess of those authorized," but stated that "the Agency continues to assert, as a legal matter, that its use of independent contractors is consistent with the FAR." OIG Report at 102.

[7]Plaintiffs assert that "on the same facts, the IRS and a U.S. district court entered three separate rulings that ignored the [Broadcasting Board's] fraudulent labeling of contracts and granted contractors certain statutory rights of appointed employment." Pls.' Opp'n at 10. As the "three separate rulings," plaintiffs cite (1) *Almutairi v. International Broad. Bureau*, 928 F. Supp. 2d 219 (D.D.C. 2013), (2) the internal Board memorandum from December 2013 in response to the OIG report, and (3) their own amended complaint at paragraph 72, which describes the *Almutairi* case. *Id.* Accordingly, plaintiffs only cite one "ruling[]," and they mischaracterize that decision, which, in any event, is inapplicable to the present case.

The *Almutairi* case does not address the question of whether alleged "fraudulent labeling of contracts" gives plaintiffs "statutory rights" to recovery under the Back Pay Act. That case involved a factual dispute over whether an individual (Mr. Almutairi) had applied for a civil service position or a purchase order vendor contract. *Almutairi*, 928 F. Supp. 2d at 226. After addressing this dispute, the district court examined whether Mr. Almutairi could still sue the government for discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), codified at 42 U.S.C. § 2000e *et seq.*, and the Rehabilitation Act of 1973, codified at 29 U.S.C. § 701 *et seq.*, even if he had only applied for a purchase order vendor contract. *Id.* at 229. The district court noted that both Title VII and the Rehabilitation Act allow discrimination suits by "employees or applicants for employment." *Id.* (citing 42 U.S.C. § 2000e-16 and 29 U.S.C. § 794a(a)(1)). Unlike the Back Pay Act, however, the remedies provided under Title VII and the Rehabilitation Act are not limited to civil service appointees; they apply to *all* employees and applicants for employment. *See, e.g.*, 42 U.S.C. § 2000e(f) (Title VII definition of an "employee" as "an individual employed by an employer"). Therefore, the district court's discussion of whether Mr. Almutairi qualified as an "employee" (or, more precisely, an "applicant for employment") for the purposes of his discrimination claim has no bearing on this

signed a contract with the government, they thought they were actually being appointed to the civil service because of misrepresentations by the government.  But that is not the circumstance alleged in the complaint.  Plaintiffs in essence assert that to procure the type of work they were performing, the Broadcasting Board *should* have entered into personal service contracts with them, or if that contract option was unavailable (for example, because the Board had already reached the statutory limit for such contracts), the Board *should* have appointed them to the civil service.  Am. Compl. ¶¶ 4, 10; *see also* Am. Compl. ¶ 27 (noting that Broadcasting Board had the option of issuing up to 60 personal service contracts or appointing staff to the civil service).  What the Board *should* have done is irrelevant to the question of whether plaintiffs can establish jurisdiction in this court under the Back Pay Act.  *See Testan*, 424 U.S. at 407 (holding that appointment is a prerequisite even if the plaintiff claims he "*should have been* placed in a higher grade") (emphasis added)).  The operative circumstance is that plaintiffs have not alleged, nor does it appear that they could non-frivolously allege, that they were *in fact* appointed to the civil service by the Board.  Accordingly, Count One of plaintiffs' complaint must be dismissed for lack of subject matter jurisdiction.

Even if plaintiffs' Count One claim were to be interpreted as an implied assertion that they were "employees" within the definition of the Back Pay Act, that claim would have to be dismissed for failure to state a claim under RCFC 12(b)(6).  Under the standards for a motion under RCFC 12(b)(6), the court must examine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  As applicable here, "[t]he question of whether a government employee is serving by contract or appointment depends upon the 'relevant statutory language and regulations and the language of the hiring documents.'"  *Calvin v. United States*, 63 Fed. Cl. 468, 472 (2005) (quoting *American Fed'n of Gov't Employees Local 1 v. Stone*, 342 F. Supp. 2d 619, 625 (N.D. Tex. 2004)).  Plaintiffs have alleged that they were all serving under express contracts during the relevant time period, either directly with the Broadcasting Board or as subcontractors to a staffing agency holding a prime contract with the Board.  Am. Compl. ¶¶ 22-25.  As this court previously stated in *Calvin*, "[w]hile the Supreme Court has not explicitly held that employment by appointment and by contract are mutually exclusive, its reasoning implies such a principle, and courts have interpreted [*Army & Air Force Exchange Serv. v. Sheehan*, 456 U.S. 728

_____

court's determination of whether a similar type of contractor would qualify as a civil service appointee under the Back Pay Act.

The internal Board memorandum is similarly inapposite.  The cited portion of the memorandum discusses a 2010 IRS tax audit in which the IRS determined that the Board should have treated purchase order vendor contractors "as employees for tax reporting purposes, including by withholding income and Social Security taxes."  Board Memorandum at 9.  The Board cited the potential tax liability as a reason for using "external service provider[s]," *i.e.*, staffing agencies, to obtain purchase order vendor contractors instead of contracting with them directly.  *Id.* at 9-10.  The IRS's determination of whether purchase order vendor contractors should be treated as employees for tax purposes has little bearing on whether plaintiffs can be "employees" within the meaning of the Back Pay Act.

(1982),] and like precedents to require mutual exclusivity." 63 Fed. Cl. at 472 (citing *Collier v. United States*, 56 Fed. Cl. 354, 356-57 (2003)).  Plaintiffs have provided no reason to disturb this principle that individuals serving under contract with the government cannot simultaneously be serving as appointees in the civil service.[8]  Accordingly, they have not plausibly alleged that they were federal employees during the relevant time period.  For the reasons stated, the government's motion to dismiss Count One of plaintiffs' amended complaint is GRANTED.

   B. *Count Two: Plaintiffs' Claim for Monetary Damages for Breach of an Implied Contract*

      1. *Subject matter jurisdiction.*

   The government has moved to dismiss Count Two of plaintiffs' complaint for lack of subject matter jurisdiction.  Def.'s Mot. at 5-7.  The government asserts that plaintiffs' breach of contract claim is barred under the provisions of the CDA, specifically 41 U.S.C. § 7103(a), because it was not first submitted to and denied by a contracting officer.  *Id.*  The CDA "applies to any express or implied contract . . . made by an executive agency for . . . the procurement of services."  41 U.S.C. § 7102(a)(2).  Under the Act's provisions, "[e]ach claim by a contractor against the [f]ederal [g]overnment relating to a contract shall be submitted to the contracting officer for a decision."  41 U.S.C. § 7103(a)(1).  After such a claim has been made, "a contractor may bring an action directly on the claim in the United States Court of Federal Claims."  41 U.S.C. § 7104(b)(1).  The government asserts that plaintiffs did not submit their breach of contract claim to a contracting officer, and this court consequently lacks jurisdiction to entertain the claim.  Def.'s Mot. at 5-6 (citing *Advanced Materials, Inc. v. United States*, 46 Fed. Cl. 697, 701 (2000); *Witherington Constr. Corp. v. United States*, 45 Fed. Cl. 208, 211 (1999); *Cincinnati Elecs. Corp. v. United States*, 32 Fed. Cl. 496, 505 (1994)).

   As with Count One, the court agrees that Count Two must be dismissed for lack of subject matter jurisdiction, but for a different reason than that asserted by the government.[9]  The

--------

   [8]If the court were to find that plaintiffs were serving as civil service appointees, this finding likely would be fatal to plaintiffs' breach of contract claim in Count Two.  *See Calvin*, 63 Fed. Cl. at 473 ("In light of the evidence adduced by the parties, as well as the principle that 'federal employees do not have contractual relationships with the government, barring an explicit agreement to the contrary executed by a federal officer who has authority to contract,' *Darden v. United States*, 18 Cl. Ct. 855, 859 (1989), plaintiffs are appointees, and their claims of breach of employment contract are precluded.").

   [9]Although the court finds there is a separate basis upon which to dismiss plaintiffs' allegations in Count Two, it notes that for at least two reasons, the provisions of the CDA requiring submission of a "claim" to the contracting officer before bringing a case before this court likely do not apply here.  First, plaintiffs' alleged contracts with the Broadcasting Board do not appear to fall within the class of contracts intended to be covered under the CDA.  As this court recently noted, "[t]he Federal Circuit has observed for many years that the CDA 'does not cover all government contracts.'"  *Anchor Tank Lines, LLC v. United States*, __ Fed. Cl. __, __, 2016 WL 3910852, at *8 (2016) (quoting *Bailey v. United States*, 46 Fed. Cl. 187, 210 (2000) (in turn quoting *Coastal Corp. v. United States*, 713 F.2d 728, 730 (Fed. Cir. 1983))).  "In particular,

. . . the CDA does not apply to contracts that do not comport with the 'cost and competition' policy considerations underlying the CDA's enactment by Congress, and where applying the CDA would not 'do justice to the realities of the situation.'" *Id.* (quoting *Institut Pasteur v. United States*, 814 F.2d 624, 627 (Fed. Cir. 1987)). As discussed *infra* at 12 n.10, plaintiffs' *express* contracts with the Broadcasting Board constituted contracts with the government for the purposes of this court's jurisdiction under the Tucker Act. These contracts may be of the type intended to be covered by the CDA, although to a certain extent the Board's contracting procedures were largely "unencumbered by normal FAR clauses, constraints, and policies." *Bailey*, 46 Fed. Cl. at 211-12; *see also* OIG Report at 6, 30-31 (noting that the Board primarily awarded contracts pursuant to the simplified acquisition procedures in FAR §§ 13.000 to 13.501, using "quarterly sources sought notices" generally announcing opportunities for freelance talent, which resulted in "a solicitation process absent any competition"). Count Two, however, is not based on these express contracts, but rather on implied contracts with the government that purportedly included additional compensation terms. Although the government correctly notes that the provisions of the CDA apply to implied contracts as well as express contracts, Def.'s Mot. at 7, the implied contracts in question must still comport with the additional standards described in *Institut Pasteur* and related precedents. Here, plaintiffs have specifically alleged that these implied contracts were not the result of a normal government procurement efforts, but rather arose because plaintiffs were providing services that would typically have been compensated in a different manner. *See* Am. Compl. ¶ 121. Accordingly, and assuming *arguendo* that the court found a basis for such implied contracts to exist, which it does not, these contracts would not "comport with the cost and competition policy considerations underlying the CDA's enactment." *Anchor Tank*, __ Fed. Cl. at __, 2016 WL 3910852, at *8 (internal quotation marks omitted).

Second, the "claim" at issue in Count Two of plaintiffs' complaint does not appear to be the type of claim contemplated by the CDA in terms of its requirements for submission to a contracting officer. The CDA does not separately define a "claim," but the FAR defines a claim as a "written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract." 48 C.F.R. § 2.101. Again, plaintiffs are not seeking monetary relief arising from their express contracts with the Broadcasting Board, nor are they asking for "adjustment or interpretation" of those contracts' terms. Rather, they are alleging that the government has breached a different set of compensation terms derived from implied contracts. As evidenced by plaintiffs' complaint, these are not claims for a "sum certain," but rather a yet-to-be-determined amount roughly equivalent to the compensation that would have been given to a federal employee doing the same type of work during the same time period. *See* Am. Compl. ¶¶ 122-23. Plaintiffs further complicate the issue by alleging that the implied contracts arose as a result of the government's "fraud" or misrepresentation in mislabeling the express contracts as ones for "nonpersonal services." Pls.' Opp'n at 11-17. Without addressing whether the type of fraud alleged by plaintiffs constitutes an exception to the CDA under 41 U.S.C. § 7103(c)(1), the court finds that it would likely not "do justice to the realities of the situation" to require plaintiffs to submit the type of claim alleged in Count Two to a contracting officer before bringing a suit in this court. *Institut Pasteur*, 814 F.2d at 627.

court recently noted that "[t]he general rule is that so long as the plaintiffs have made a non-frivolous claim that they are 'entitled to money from the United States' . . . because they have a contract right, this court has jurisdiction to settle the dispute." *Anchor Tank*, __ Fed. Cl. at __, 2016 WL 3910852, at \*7 (quoting *Adarbe v. United States*, 58 Fed. Cl. 707, 714 (2003) (in turn quoting *Ralston Steel Corp. v. United States*, 340 F.2d 663, 667 (Ct. Cl. 1965))); *see also City of Cincinnati v. United States*, 153 F.3d 1375, 1377 (Fed. Cir. 1998) (holding that a "non-frivolous assertion of an implied contract with the United States" is sufficient to establish subject matter jurisdiction in this court). The four named plaintiffs allege that they worked for the Broadcasting Board under "independent contracts," including "purchase orders" or orders under "blanket purchase agreements," and that approximately one year ago, two of the four plaintiffs (Mr. Lee and Ms. Ryan) began providing services through subcontracts with staffing agencies retained by the Board. Am. Compl. ¶¶ 22-25.[10] Plaintiffs' claim in Count Two, however, is not based on an entitlement to money damages under these express contracts. Instead, plaintiffs allege they also had implied-in-fact contracts with the government that entitled them to additional "benefits, tax payments, wages or salaries, and other consideration." Am. Compl. ¶ 121.

Plaintiffs have failed to make a non-frivolous claim of an implied-in-fact contract with the government above and beyond the provisions of their express contracts. "The existence of an express contract precludes the existence of an implied contract dealing with the same subject, unless the implied contract is entirely unrelated to the express contract." *Atlas Corp. v. United States*, 895 F.2d 745, 754-56 (Fed. Cir. 1990) (finding that plaintiffs were not entitled to additional payments to cover the costs of tailings stabilization because those costs were not "'entirely unrelated' to the costs included in the contract prices," and affirming dismissal for lack of jurisdiction); *see also Algonac Mfg. Co. v. United States*, 428 F.2d 1241, 1255 (Ct. Cl. 1970) ("[A]s a general rule there can be no implied contract where there is an express contract between the parties covering the same subject."); *Cummings v. United States*, 17 Cl. Ct. 475, 480 n.8 (1989) (quoting *Algonac Mfg.* and disposing of plaintiff's claim of an implied contract without further comment because plaintiff had already alleged a written contract on the same subject); *Trauma Serv. Grp., Ltd. v. United States*, 33 Fed. Cl. 426, 432 (1995) (also citing *Algonac Mfg.*), *aff'd*, 104 F.3d 1321 (Fed. Cir. 1997). Here, plaintiffs do not allege that their entitlement to additional compensation is based on work done outside the scope of their express contracts. Rather, they argue that their express contracts *should* have been styled as personal service contracts, in which case plaintiffs would have been entitled to compensation in the same manner

---

[10]The court does not doubt that the plaintiffs, as direct contractors and not subcontractors, worked under express contracts with the government for the purposes of the court's jurisdiction under the Tucker Act. *See DaVita, Inc. v. United States*, 110 Fed. Cl. 71, 81 (2013) ("A purchase order 'is an offer by the government to the supplier to buy certain supplies or services upon specific conditions. A contract is established when the supplier accepts the order, by furnishing the supplies or services ordered or by . . . substantial performance prior to the due date.'" (quoting *Canal 66 P'ship v. United States*, 87 Fed. Cl. 722, 726 (2009) (in turn quoting *Zhengxing v. United States*, 71 Fed. Cl. 732, 738 n.21 (2006)), *aff'd*, 204 Fed. Appx. 885 (Fed. Cir. 2006) (alteration in *Canal 66 P'ship*)). The pertinent question, however, is whether plaintiffs have made a non-frivolous claim of entitlement to money damages under an *implied* contract with the government beyond the terms of their *express* contracts.

as federal employees.  Am. Compl. ¶¶ 118-24.  Plaintiffs do not allege that the government actually offered to provide them additional compensation, or that they were pressed into providing services beyond what was contemplated in their express contracts, thus entitling them to additional compensation.  Such allegations might form the basis for an implied contract "entirely unrelated" to the terms of the express contracts already held by the plaintiffs.  *Atlas Corp.*, 895 F.2d at 754.  Absent these or similar allegations, however, the court lacks jurisdiction to consider a claim that an implied contract has been breached when there is no basis on which such an implied contract could be established.

Alternatively, plaintiffs argue that under the theory of *quantum meruit* ("as much as he merited"), the government received the benefit of "personal services" performed by the plaintiffs without providing the compensation that would typically be provided to personal services contractors.  Am. Compl. ¶ 126; *see also United States v. Amdahl Corp.*, 786 F.2d 387, 393 n.6 (Fed. Cir. 1986) (defining "quantum meruit").  This contention is premised on accepting the postulate that plaintiffs' individual contracts were void because the Broadcasting Board entered the contracts in contravention of FAR § 37.104.  The court also lacks jurisdiction to consider this argument.   "A recovery in quantum meruit is based on an implied in-law contract.  That is, a contract in which there is no actual agreement between the parties, but the law imposes a duty in order to prevent injustice."  *International Data Prods. Corp. v. United States*, 492 F.3d 1317, 1325 (Fed. Cir. 2007).  The Court of Federal Claims generally does not have jurisdiction over *quantum meruit* or implied-in-law contract claims.  *Id.*; *see also Trauma Serv. Grp.*, 33 Fed. Cl. at 432 ("Claims for unjust enrichment on quantum meruit damages state claims for breaches of contracts implied in law, over which the court has no jurisdiction." (citing *United States v. Mitchell,* 463 U.S. 206, 218 (1983); *United States v. Minnesota Mutual Co. Inc.,* 271 U.S. 212, 217 (1926); *Atlas Corp.*, 895 F.2d at 755)).[11]  The Federal Circuit has found an exception to this general jurisdictional rule and allowed recovery under a *quantum meruit* or *quantum valebant* ("as much as it was worth") theory when a contractor provided goods or services to the government in good faith under an express contract, but that contract was later rescinded for invalidity.  *See Amdahl*, 786 F.2d at 393; *see also International Data Prods.*, 492 F.3d at 1325-26 (acknowledging the exception in *Amdahl* but finding it was inapplicable because the contract in question was "neither invalid nor unenforceable"); *United Pac. Ins. Co. v. United States*, 464 F.3d 1325, 1329-34 (Fed. Cir. 2006) (concluding that the exception in *Amdahl* was inapplicable because the plaintiffs were paid "the full amount required by the contract").  In this instance, the exception in *Amdahl* is not applicable to plaintiffs' claim because the express contracts with plaintiffs have not been found to be invalid, and plaintiffs have not alleged that they were not paid in full under the express terms of those contracts.[12]  Accordingly, this court does not have jurisdiction over plaintiffs' *quantum meruit* claim.

---

[11]This jurisdictional bar is based in part on the principle that no contract with the government can arise without affirmative action by a contracting officer with the authority to bind the government.  *See Trauma Serv. Grp.*, 33 Fed. Cl. at 431-32 (citing *Merritt v. United States,* 267 U.S. 338, 341 (1925)).

[12]At the hearing, plaintiffs raised for the first time the argument that their express contracts with the Broadcasting Board might have been void *ab initio* due to fraud, misrepresentation, or other defects, and that this could be an additional basis for their *quantum*

2.  *Failure to state a claim upon which relief can be granted.*

Even if this court had jurisdiction over plaintiffs' breach of contract claim in Count Two, this claim would have to be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  As discussed *supra*, a motion under RCFC 12(b)(6) requires the court to examine whether there is sufficient factual matter in the complaint to establish a "claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570.  The government's motion to dismiss plaintiffs' complaint cites both RCFC 12(b)(1) and 12(b)(6).  Def.'s Mot. at 1.  Although the government focused its breach of contract arguments on jurisdictional issues, the court may nonetheless also consider whether, under the standards applicable to RCFC 12(b)(6), plaintiffs' complaint states a plausible claim to relief.[13]  In *Trauma Serv. Grp.*, 104 F.3d at 1324-27, the court of appeals concluded that plaintiff's allegations of an express or implied contract with the government were sufficient to establish jurisdiction in the Court of Federal Claims, but it nevertheless affirmed the trial court's decision to dismiss the complaint under RCFC 12(b)(6) because neither an express nor an implied contract could have existed as a matter of law.

Although plaintiffs frame their claim in Count Two as a breach of an *implied* contract, it could alternatively be viewed as an allegation that certain terms involving compensation were omitted from their *express* contracts with the government.  In that case, plaintiffs would be

_____

*meruit* claim.  Hr'g Tr. 26:23-25, 33:8-15.  The government responded preliminarily at the hearing, and, in a notice filed after the hearing at the court's request, the government noted that under the rationale in *American Tel. & Tel. Co. v. United States*, 177 F.3d 1368, 1373-74 (Fed. Cir. 1999), plaintiffs' contracts would not necessarily be void because of fraud or other contravention of statute or regulation, and that the court must look instead to the purpose of the pertinent statute or regulation that was allegedly violated.  Def.'s Notice of Authority at 2, ECF No. 22; *see also American Tel. & Tel.*, 177 F.3d at 1374 (recognizing "the strong policy of supporting the integrity of contracts made by and with the United States").  It is not necessary for the court to address plaintiffs' further merits-based argument, however, because it does not fit within the jurisdictional exception contained in *Amdahl*.  As was the case in *United Pacific Insurance*, 464 F.3d at 1329-34, plaintiffs here have already been paid in full for contracts spanning as far back as 2003, Hr'g Tr. 23:8-13; Am. Compl. ¶¶ 22-25.  Accordingly, and even if plaintiffs now wish to contend that these contracts are void, the court has no basis on which to take jurisdiction over plaintiffs' *quantum meruit* claim.

[13]Plaintiffs advanced detailed arguments at the hearing as to why their breach of contract count states a claim, *see* Hr'g Tr. 23:14 to 28:7, 32:23 to 35:4, 48:19 to 50:17, and 55:9 to 56:1, and the government responded to those arguments, *see* Hr'g Tr. 42:10 to 44:7.  Plaintiffs elaborated on this oral submission with a supplemental brief addressing the government's arguments that no viable claims had been stated in Count Two.  *See* Pls.' Resp. to Def.'s Notice of Authority, ECF No. 24.  In these circumstances, the court may consider whether the pertinent count of the complaint states a claim.  *See Anaheim Gardens v. United States*, 444 F.3d 1309, 1315 (Fed. Cir. 2006) ("The trial court may dismiss *sua sponte* under Rule 12(b)(6), provided that the pleadings sufficiently evince a basis for that action."); *see also Shockley v. Jones*, 823 F.2d 1068, 1072-73 & n.3 (7th Cir. 1987) (stating that a *sua sponte* dismissal under Rule 12(b)(6) can be appropriate when plaintiff had notice and an opportunity to be heard).

asking the court to insert implied *terms* to fill the gap left by this omission. Even under this lenient reading of the complaint, plaintiffs have not plausibly alleged their express contracts with the government omitted any essential terms. "It is not the habit of courts to resolve disputes over omission concerning [contract] matters by resorting to implied terms." E. Allan Farnsworth, *Disputes Over Omission in Contracts*, 68 Colum. L. Rev. 860, 862 (1968) (advocating resolution of omissions through inferences from the actual contract terms, or "basic principles of fairness or justice," *id.* at 877, rather than by inserting implied terms based on the parties' presumed intentions). An omission, or a "*casus omissus*" ("case which is not provided for"), generally occurs where there is an event not accounted for in the express language of the contract and not anticipated by the parties. *Id.* at 862 n.11, 873-76 (quoting 1 J. Bouvier, *Law Dictionary* 431 (8th ed. 1914)); *see also Restatement (Second) Contracts* § 204 cmt. b (1981) ("*How omission occurs.* The parties to an agreement may entirely fail to foresee the situation which later arises and gives rise to a dispute; they then have no expectations with respect to that situation."). If an omitted term is "essential," *i.e.*, it is necessary to the determination of the parties' rights under the contract, a court may fill this gap with "a term [that] is reasonable in the circumstances." *Restatement (Second) Contracts* § 204; *see also Pacific Gas & Elec. Co. v. United States*, 536 F.3d 1282, 1289 (Fed. Cir. 2008) (stating that the court can supply a minimum acceptance rate in a contract for storage of spent nuclear fuel because without that term, "the contract would be meaningless and nonsensical"); *Howell v. United States*, 51 Fed. Cl. 516, 520-21 (2002) (court may supply a minimum quantity term to an indefinite-quantity contract when the parties failed to include that term).

Here, plaintiffs have not demonstrated that additional compensation terms were "essential" to their contracts.[14] Again, nothing in plaintiffs' complaint suggests that anything

_____

[14] In their amended complaint, plaintiffs assert that their express contracts with the Broadcasting Board were required to contain the clause set out in FAR § 52.232-3, which pertains to personal service contracts and states:

> The Government shall pay the Contractor for the services performed by the Contractor, as set forth in the Schedule of this contract, at the rates prescribed, upon the submission by the Contractor of proper invoices or time statements to the office or officer designated and at the time provided for in this contract. The Government shall also pay the Contractor (a) a per diem rate in lieu of subsistence for each day the Contractor is in a travel status away from home or regular place of employment in accordance with Federal Travel Regulations (41 CFR [§] 101-7) as authorized in appropriate Travel Orders; and (b) any other transportation expenses if provided for in the Schedule.

Am. Compl. ¶ 86 (quoting FAR § 52-232-3 in part). Plaintiffs argue that the reference to "rates prescribed" in this clause refers to rates prescribed for federal employees under Title 5 of the Code of Federal Regulations, as well as by internal agency rules. Am. Compl. ¶¶ 87-91; *see also* Hr'g Tr. 35:16 to 37:11. Plaintiffs concede that the Broadcasting Board has no such rules prescribing certain rates of pay or benefits for personal service contracts, Am. Compl. ¶ 87-88, but nevertheless assert that the wages and benefits prescribed in the rules of the Board's "sister and parent agencies," namely, the United States Agency for International Development and the

changed with regard to the nature of their work under the contracts or the government's representations about how plaintiffs would be compensated. The only difference appears to be the OIG's report finding that the Broadcasting Board issued certain "nonpersonal service[]" contracts that should have been identified and structured as "personal service[]" contracts. The court cannot, however, use those findings as a basis to substitute or supplement compensation terms in plaintiffs' prior contracts with the Board with "implied" terms entitling plaintiffs to the type of compensation they would have preferred to receive. Count Two of plaintiffs' amended complaint is unavailing.

---

Department of State, should be substituted in the absence of such rules for the Board, Am. Compl. ¶¶ 89-91.

The contract clause contained in FAR § 52.232-3 falls within a group of sections (FAR §§ 52.232-1 to -10) that pertain to "invoice payments" made under fixed-price contracts. *See* 2 Karen L. Manos, *Government Contract Costs & Pricing* § 85:8 (June 2016 ed.). Similar provisions for payments under fixed-price contracts generally (FAR § 52.232-1) and payments under fixed-price research and development contracts (FAR § 52-232-2) substitute the phrase "rates prescribed" for "the prices stipulated in [the] contract." The use of "rates prescribed" in FAR § 52.232-3 is preceded by the phrase "as set forth in the Schedule of this contract," which indicates that the clause refers to the rates prescribed in the contract's schedule, as well as to the "services performed" under that schedule. Accordingly, addition of this clause to plaintiffs' express contracts with the Broadcasting Board would not entitle plaintiffs to any wages or benefits beyond those already specified in the contract. In this same vein, FAR § 52.232-3 refers to entitlement to "per diem" rates related to travel, but plaintiffs have not alleged that their express contracts omitted such entitlements. Plaintiffs list a total of 22 types of pay and benefits they believe they were denied under their express contracts, but none of them involves reimbursement for travel-related expenses. Am. Compl. ¶¶ 85, 115, 122.

At the hearing, plaintiffs also elaborated the argument that certain statutes and regulations other than the FAR compelled the inclusion of additional terms related to compensation and benefits in plaintiffs' express contracts with the Broadcasting Board. Hr'g Tr. 35:13 to 37:11. Although plaintiffs did not enumerate these provisions at the hearing, they referred to a list in their amended complaint, Am. Compl. ¶¶ 85, 115, which included certain statutes and regulations to be used as "proxies for determining reasonable compensation" allegedly owed to plaintiffs. Am. Compl. ¶ 85. The court finds that the cited authorities are inapplicable to plaintiffs even if, as they allege, they should have been compensated as personal service contractors. For example, plaintiffs cite various provisions of Title 5 of the United States Code related to basic rates of pay, premium pay, paid leave and holidays, compensation for work-related injuries, and various retirement, health, and insurance benefits. Am. Compl. ¶ 85. However, the same definition for "employee" that applies to the Back Pay Act applies to all other provisions of Title 5, *i.e.*, the provisions only apply to individuals "appointed in the civil service." 5 U.S.C. § 2105. The same is true for the regulations plaintiffs cite within Title 5 of the Code of Federal Regulations (*e.g.*, 5 C.F.R. Parts 304 and 511), which tellingly all fall within Subchapter B entitled "Civil Service Regulations." Am. Compl. ¶ 85. Accordingly, the cited statutes and regulations do not require that any additional terms be included in plaintiffs' express contracts with the Broadcasting Board.

**CONCLUSION**

For the reasons stated, the government's motion to dismiss plaintiffs' complaint under RCFC 12(b)(1) and 12(b)(6) is GRANTED.[15]  The clerk will enter judgment in accord with this disposition.

No costs.

It is so **ORDERED**.

s/ Charles F. Lettow
Charles F. Lettow
Judge

---

[15]Plaintiffs' motion to certify a class of similarly situated contractors is DENIED as moot, as is plaintiffs' motion for an extension of time to file a reply in support of their motion to certify a class.