# In the United States Court of Federal Claims

No. 15-1555C

(Filed: January 18, 2017)

| | | |
|---|---|---|
| SEH AHN LEE, et al., | ) | Motions for reconsideration and for leave |
| | ) | to file an amended complaint; RCFC 59(e); |
| Plaintiffs, | ) | RCFC 15(a) |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

John P. Pierce, Themis PLLC, Washington, D.C., for plaintiffs. With him on the briefs and at the hearing were David L. Engelhardt and Michael Cone, Themis PLLC, Washington, D.C.

Hillary A. Stern, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With her at the hearing was Elizabeth Parish, Interim General Counsel, Broadcasting Board of Governors, Washington, D.C. With her on the briefs were Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Civil Division, and Robert E. Kirschman, Jr., Director, and Steven J. Gillingham, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C.

## OPINION AND ORDER

LETTOW, Judge.

On August 24, 2016, the court issued a decision in this case dismissing the complaint of plaintiffs Seh Ahn Lee, Irina Ryan, Ahmad Nariman, and Mark Peach under Rules 12(b)(1) and 12(b)(6) of the Rules of the Court of Federal Claims ("RCFC"). *See Lee v. United States*, 127 Fed. Cl. 734 (2016). In their complaint, plaintiffs had alleged that they were retained under contracts as nonpersonal service vendors by the Broadcasting Board of Governors ("Broadcasting Board" or "Board"), an independent agency of the United States ("the government"), but throughout the performance of the contracts they acted in the capacity of personal service contractors. Plaintiffs invoked a right to monetary relief under the Back Pay Act, 5 U.S.C. § 5596, or, alternatively, for breach of an implied contract. They sought to recover the compensation they believed would be appropriate for the services they provided to the government had their contracts been properly classified as personal service contracts. Plaintiffs also alleged that they were bringing suit as representatives of a class of contractors who were similarly situated to them.

On September 22, 2016, plaintiffs filed concurrent motions for reconsideration and for leave to file a second amended complaint pursuant to RCFC 59(e) and 15(a), respectively. Pls.' Mot. for Leave to File Second Am. Compl. ("Pls.' Mot."), ECF No. 29. In their proposed second amended complaint, plaintiffs would preserve their Back Pay Act claim for purposes of appeal (Count I) and bring new claims for breach of express contract (Count II), breach of implied contract (Count III), and relief in *quantum meruit* (Count IV). Plaintiffs now assert that their contracts with the Broadcasting Board are void because they exceed the Board's authority to issue personal service contracts, and plaintiffs again claim that they are entitled to damages in an amount commensurate with the compensation they allegedly should have been paid as personal service contractors. Plaintiffs also allege that at times they performed personal services for the Broadcasting Board without being subject to any express contract, during which times they claim that they are entitled to damages for the fair market value of the services performed. In response, the government argues that the new claims fail to cure the jurisdictional defects identified in the court's prior opinion and also fail to state claims upon which relief could be granted.

For the reasons stated, both plaintiffs' motion for reconsideration and motion to amend are denied.

## BACKGROUND

The court's prior opinion set forth the pertinent facts in detail. The Broadcasting Board is an independent agency of the United States, established in 1994 to "streamline" the government's management of its international broadcasting activities through organizations such as Voice of America. *Lee*, 127 Fed. Cl. at 737 (citing United States International Broadcasting Act of 1994, Pub. L. No. 103-236, §§ 301-15, 108 Stat. 382 (1994) (codified at 22 U.S.C. §§ 6201-16)). Since 1999, the Board has been an independent agency under the general oversight of the Secretary of State. *Id.* (citing Omnibus Consolidated and Emergency Supplemental Appropriations Act of 1999, Pub. L. No. 105-277, § 1323, 112 Stat. 2681 (1998)). Plaintiffs are "four individuals who provided services to various elements of Voice of America – an organization within the Broadcasting Board – either directly through individual purchase order vendor contracts or as independent subcontractors to staffing agencies under prime contracts with the Board." *Id.* Plaintiffs allege that approximately 660 potential class members served under similar contracts with the Board. *Id.*; *see also* [Proposed] Second Am. Compl. ¶ 10.

In 2013, the Department of State's Office of the Inspector General ("OIG") conducted an investigation into the Board's contracting practices. *See Lee*, 127 Fed. Cl. at 737-39; [Proposed] Second Am. Compl. Ex. A (Audit of the Broadcasting Board of Governors Administration and Oversight of Acquisition Functions (June 2014) ("OIG Report")), ECF No. 29-4. In this investigation, the OIG determined that the Broadcasting Board most likely exceeded its statutory authority to award personal service contracts. *Lee*, 127 Fed. Cl. at 738 (citing OIG Report at 15). Pursuant to the Foreign Relations Authorization Act, Fiscal Year 2003, Pub. L. No. 107-228, § 504, 116 Stat. 1350 (2002) (codified at 22 U.S.C. § 6206 note), the Board was authorized to hire up to 60 individuals under personal service contracts, but the OIG concluded that the Board likely exceeded this limit "by awarding an overwhelming majority of all service[] contracts as nonpersonal service[] contracts, though they were personal in nature." *Lee*, 127 Fed. Cl. at 738 (citing OIG Report at 15). The Board disagreed with the OIG's determination that the Board had exceeded its statutory authority, but it indicated that it would shift away from using nonpersonal service "purchase order vendor" contracts and towards hiring subcontractors through staffing

agencies to perform the same functions as the purchase order vendor contractors. *See id.* at 739 (citing OIG Report at 16-17).

Following the OIG investigation and report, plaintiffs filed their original complaint on December 21, 2015 and an amended complaint on March 7, 2016. In the amended complaint, plaintiffs alleged "that their contracts with the Broadcasting Board, as well as those of other potential class members, fall within the type of contracts that, according to the OIG's analysis, should have been classified as personal service contracts." *Lee*, 127 Fed. Cl. at 739. They therefore claimed an entitlement to higher salaries and greater benefits commensurate with the amounts paid to contractors performing under personal service contracts, and brought claims to recover those amounts under the Back Pay Act and under a theory of breach of implied contract. *Id.*

In its prior opinion, the court dismissed the Back Pay Act claim for lack of jurisdiction, determining that plaintiffs did not fall within the class of individuals covered by the Back Pay Act because they were never appointed to the civil service. *See Lee*, 127 Fed. Cl. at 740-43. Plaintiffs' assertion that they "should have been" appointed because they were purportedly performing personal services was deemed insufficient to create jurisdiction under the Back Pay Act. *See id.* The court held that plaintiffs were serving under express contracts at the relevant time, so plaintiffs could not "plausibly allege[] that they were federal employees during the relevant time period" because work under a contract and employment by appointment are "mutually exclusive." *Id.* at 742-43 (quoting *Calvin v. United States*, 63 Fed. Cl. 468, 472 (2005), in turn citing *Collier v. United States*, 56 Fed. Cl. 354, 356-57 (2003), *aff'd*, 379 F.3d 1330 (Fed. Cir. 2004)).

The court also dismissed plaintiffs' breach of implied contract claim for lack of jurisdiction and for failure to state a claim. As to lack of jurisdiction, the court held that there was "no basis" on which to find an implied contract between plaintiffs and the Broadcasting Board for services and compensation beyond the scope of their express contracts. *Lee*, 127 Fed. Cl. at 745 (citing *Atlas Corp. v. United States*, 895 F.2d 745, 754-56 (Fed. Cir. 1990); *Algonac Mfg. Co. v. United States*, 428 F.2d 1241, 1255 (Ct. Cl. 1970)). Further, the court held that it lacked jurisdiction to consider plaintiffs' *quantum meruit* theory, through which plaintiffs argued that the government received the benefit of plaintiffs' performance of personal services without adequately compensating them. *See id.* at 745-46. This court generally lacks jurisdiction over *quantum meruit* or implied-in-law contract claims, except in circumstances where "a contractor provided goods or services to the government in good faith under an express contract, but that contract was later rescinded for invalidity." *Id.* at 746 (citing *United States v. Amdahl Corp.*, 786 F.2d 387, 393 (Fed. Cir. 1986)). The court determined that the exception identified in *Amdahl* did not apply to plaintiffs' *quantum meruit* claim because plaintiffs did not allege that they were paid less than the rate specified in the express contracts, and the express contracts had not been found to be invalid. *Id.* at 746. Therefore, the court lacked jurisdiction over the *quantum meruit* claim. Finally, the court dismissed the claim for breach of implied contract for failure to state a claim upon which relief could be granted. Construing the claim to allege that certain compensation terms (*i.e.*, for personal-services compensation) were omitted from the express contracts, the court found that plaintiffs had not plausibly alleged that such terms were "essential" to their express contracts such that the court could properly supplant the express compensation terms in their contracts with terms reflecting plaintiffs' "preferred" compensation at the rate for personal services. *Id.* at 746-48. Accordingly, the court dismissed plaintiffs'

complaint in its entirety and denied their motion for class certification as moot. Judgment was entered on August 25, 2016.

Plaintiffs' motions for reconsideration and to file a second amended complaint were timely filed on September 22, 2016. Count I of the proposed second amended complaint preserves plaintiffs' previously-dismissed Back Pay Act claim solely for purposes of appeal. *See* [Proposed] Second Am. Compl. ¶ 113; Pls.' Reply Brief in Further Support of Their Mot. for Leave to File the Second Am. Compl. ("Pls.' Reply") at 2, ECF No. 35. The remaining counts amend and supplement plaintiffs' contract claims.

In Count II, plaintiffs allege breach of their express contracts with the Broadcasting Board. They claim that their express contracts for nonpersonal services entitled them to certain "rights" of independent contracting, such as "a high degree of independence in choosing the time, place, and manner of service" and "the autonomy to work on many projects from many clients simultaneously," in exchange for a "corresponding reduction in compensation." [Proposed] Second Am. Compl. ¶¶ 125-26. Plaintiffs allege that their contracts were breached because they were paid at independent-contractor rates but had to "report to a federal office chosen by the [Broadcasting Board]" rather than work from a preferred location, could not use their own equipment, set their own hours, or work for other clients, and were directly supervised by employees of the federal government. [Proposed] Second Am. Compl. ¶ 129. Additionally, plaintiffs allege that the Board "demanded, received, and accepted personal services, which were outside the scope of work under the express contracts" in further breach of said contracts. [Proposed] Second Am. Compl. ¶ 130.

In Count III, presented in the alternative to Count II, plaintiffs allege that their contracts with the Broadcasting Board "were void or are voidable, in whole or in part," such that they are entitled to recover upon implied contracts with the Board. [Proposed] Second Am. Compl. ¶¶ 138, 140. The Federal Acquisition Regulations ("FAR") state that "[a]gencies shall not award personal services contracts unless specifically authorized by statute," 48 C.F.R. § 37.104(b), and the Board was only authorized to award up to 60 such contracts, 22 U.S.C. § 6206 note, subsection (b)(4). Plaintiffs allege that their contracts were outside the scope of this authorization, rendering the contracts void. [Proposed] Second Am. Compl. ¶¶ 135-38. As a result, plaintiffs ask the court to provide implied contract terms that reflect the scope of plaintiffs' personal-service work and "compensate[] [p]laintiffs for the fair market value of their services." [Proposed] Second Am. Compl. ¶ 140. Additionally, plaintiffs newly allege that they worked for the Broadcasting Board at times when they were not party to any express contract because, "among other reasons," their prior contracts had lapsed prior to renewal. [Proposed] Second Am. Compl. ¶ 141. Plaintiffs claim that during these periods they were parties to implied contracts with the Board for personal services in exchange for the fair market value of such services, and that any payments to plaintiffs by the Board in amounts less than the fair market value of personal services constitute breaches of these implied contracts. [Proposed] Second Am. Compl. ¶¶ 141, 145.

Count IV, presented in the alternative to Counts II and III, seeks damages under a *quantum meruit* theory. Plaintiffs reassert that the express contracts are void and that they worked at times for the Board without any express contract. [Proposed] Second Am. Compl. ¶¶ 149, 154. Plaintiffs thus allege that they are entitled to damages in *quantum meruit* for the value of services provided under the void contracts and at the times when no express contract governed

the relationship between plaintiffs and the Board, in an amount equaling the difference between the fair market value of services provided and the payments previously received.  [Proposed] Second Am. Compl. ¶¶ 156-59.

Plaintiffs also append new exhibits to their proposed second amended complaint.  In addition to refiling the June 2014 OIG Report regarding the Board's contracting practices, *see* [Proposed] Second Am. Compl. Ex. A, plaintiffs have submitted various documents relating to the contracts between the Board and plaintiffs Peach, Lee, and Ryan, including some of the contracts themselves.  For plaintiff Peach, who has been a contractor with the Board since 2007, *see* [Proposed] Second Am. Compl. ¶ 26, one contract spanning from October 1, 2009 to September 30, 2010 has been provided, [Proposed] Second Am. Compl. Ex. B, ECF No. 29-4. For plaintiff Lee, who was a contractor with the Board from 2003 to 2015 and has been a subcontractor to the Board employed by Technologist, Inc. since 2015, *see* [Proposed] Second Am. Compl. ¶ 23, a number of contract iterations and related documents from 2008 to 2015 have been provided to the court, [Proposed] Second Am. Compl. Ex. C, at 3-261, ECF 29-5.  The Federal Contract Compliance Manual, published in July 2013, has also been included within Exhibit C, *see* [Proposed] Second Am. Compl. Ex. C, at 262-798, along with an untitled ten-page document that appears to be a part of instructions to offerors for a Broadcasting Board contract solicitation, *see* [Proposed] Second Am. Compl. Ex. C, at 799-808.  For plaintiff Ryan, who was a contractor with the Board at various times between 2000 and 2015 and has been a subcontractor to the Board employed by CTS-Computer Technology Services, Inc. since 2015, *see* [Proposed] Second Am. Compl. ¶ 24, the court has received various contract iterations and related documents spanning from 2009 to 2015, [Proposed] Second Am. Compl. Ex. D, ECF No. 29-6.  No contract documentation has been provided with regard to plaintiff Nariman, who was a contractor with the Board from 2007 to 2013.  *See* [Proposed] Second Am. Compl. ¶ 25.

Plaintiffs' motions for reconsideration and to file their second amended complaint have been fully briefed and were addressed at a hearing on December 15, 2016.

## STANDARDS FOR DECISION

RCFC 59(e) allows a party to file a motion to amend or alter a final judgment within 28 days of the entry of judgment.  Pursuant to RCFC 59:

(a) The court may, on motion, grant a new trial or a motion for reconsideration on all or some of the issues – and to any party – as follows:

(A) for any reason for which a new trial has heretofore been granted in an action at law in federal court; [or]

(B) for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court.

RCFC 59(a)(1)(A), (B).  The party submitting a motion for reconsideration bears the burden of "show[ing] exceptional circumstances justifying relief based on manifest error of law or mistake of fact." *Jackson v. United States*, __ Fed. Appx. __, __, 2016 WL 6518563, at *3 (Fed. Cir. Nov. 3, 2016) (quoting *Kaplan v. United States*, 115 Fed. Cl. 491, 493 (2014), in turn quoting *Stueve Bros. Farms, LLC v. United States*, 107 Fed. Cl. 469, 474 (2012), *aff'd*, 737 F.3d 750

(Fed. Cir. 2013)).  The moving party must specifically show: "(1) the occurrence of an intervening change in the controlling law; (2) the availability of previously unavailable evidence; or (3) the necessity of allowing the motion to prevent manifest injustice."  *Stueve Bros. Farms*, 107 Fed. Cl. at 474-75 (quoting *Matthews v. United States*, 73 Fed. Cl. 524, 526 (2006)).

Under RCFC 15, "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  RCFC 15(a)(2).  While the court has discretion to grant or deny leave to amend, factors such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment" counsel against granting a party's motion for leave to amend.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).

The Federal Circuit "has not determined the standard to be applied when a party moves to amend its pleadings after judgment has been entered" pursuant to the Rules of the Court of Federal Claims.  *Stueve Bros. Farms*, 107 Fed. Cl. at 476.  Other circuits are split as to whether the court should apply the "more lenient" Rule 15 standard "to determine both whether amendment is appropriate and whether to set aside or vacate the judgment under Rule 59 or Rule 60," or to apply the "more rigorous" Rule 59 standard to set aside or vacate the judgment and subsequently apply the Rule 15 standard to allow amendment of the complaint.  *Id.* (comparing the "more lenient" standard applied in the 4th and 5th Circuits to the "more rigorous" standard applied in the 1st, 3rd, and 7th Circuits).[1]  In the circuits applying the "more rigorous" two-part standard, "courts may deny both the motion to reopen the judgment and the motion to amend the complaint if the proposed amendment would be futile."  *Id.* (citing *Ahmed*, 297 F.3d at 209).

## ANALYSIS

The court need not reach a decision regarding the split in authority over the standard to be applied in this court for concurrent motions for reconsideration and to amend the pleadings after the entry of judgment, because neither the requirements for RCFC 59 nor for RCFC 15(a) are satisfied in this case.  *See Piotrowski v. United States*, No. 13-760C, 2015 WL 1651610, at *4 n.3 (Fed. Cl. Apr. 10, 2015) (determining that the court did not need to resolve the split in authority regarding the standards for concurrent motions under RCFC 59(e) and 15(a) because the more lenient amendment standard was not satisfied).

*A. Motion for Reconsideration Pursuant to RCFC 59(e)*

Plaintiffs do not allege a change in the controlling law or that new, previously unavailable evidence relevant to their claims has now become available.  Thus the court construes plaintiffs' motion to allege that reconsideration of the previously-entered judgment is necessary to prevent manifest injustice.  *See Stueve Bros. Farms*, 107 Fed. Cl. at 475.  In this

---

[1]For the "more lenient" standard, *Stueve Bros. Farms* cites *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011), and *Dussouy v. Gulf Coast Inc. Corp.*, 660 F.2d 594, 597 n.1 (5th Cir. 1981).  For the "more rigorous" standard, *Stueve Bros. Farms* cites *Palmer v. Champion Mortg.*, 465 F.3d 24, 30 (1st Cir. 2006); *Ahmed v. Dragovich*, 297 F.3d 201, 207-08 (3d Cir. 2002); and *First Nat'l Bank of Louisville v. Continental Ill. Nat'l Bank & Trust Co. of Chi.*, 933 F.2d 466, 468 (7th Cir. 1991).

context, plaintiffs must demonstrate that the prior judgment creates an obvious injustice that is "apparent to the point of being almost indisputable." *Pacific Gas & Electric Co. v. United States*, 74 Fed. Cl. 779, 785 (2006), *aff'd in part and rev'd in part*, 536 F.3d 1282 (Fed. Cir. 2008). It is not sufficient for plaintiffs to reassert the same arguments they made in earlier proceedings, nor can plaintiffs raise new arguments that could have been made earlier. *See Freeman v. United States*, No. 01-39L, 2016 WL 943859, at *2 (Fed. Cl. Mar. 1, 2016) (internal citations omitted); *Stueve Bros. Farms*, 107 Fed. Cl. at 475. A motion for reconsideration will only be granted in exceptional circumstances; it is not an opportunity for "an unhappy litigant [to have] an additional chance to sway the court." *Stueve Bros. Farms*, 107 Fed. Cl. at 475 (internal quotation marks and citations omitted); *Bannum, Inc. v. United States*, 59 Fed. Cl. 241, 243 (2003).

Plaintiffs have failed to demonstrate that reconsideration is necessary to prevent manifest injustice in this case. Rather than bringing claims directly under the Back Pay Act and for breach of implied contract based on plaintiffs' purported provision of personal services, plaintiffs now claim that their express contracts have been breached or are void because the Broadcasting Board allegedly required them to perform personal services even though plaintiffs were classified as independent contractors performing nonpersonal services. The crux of plaintiffs' new claims is the same as that of the claims previously dismissed by the court – that their contracts with the Broadcasting Board should have been classified as personal service contracts rather than purchase order or nonpersonal service contracts, and that plaintiffs are entitled to additional compensation and benefits commensurate with those provided to personal service contractors. They have merely altered how their claims are framed in attempting to "cure[] the [c]ourt's grounds for dismissal." Pls.' Mot. at 1. Although the claims rest on a different legal theory, plaintiffs' arguments regarding the allegedly improper classification of their contracts are essentially the same as those that were brought in the previous proceeding and were rejected by the court. *Compare, e.g.*, Pls.' Opp'n to Def.'s Mot. to Dismiss at 1, ECF No. 15 ("[T]he [Broadcasting Board] issued thousands of contracts for 'personal services' in willful violation of law, deliberately denied the contractors the benefits and rates of pay that were commensurate with their actual service, and fraudulently labeled the contracts for 'non-personal' services to conceal the lawlessness and under-compensation."), *with* Pls.' Mot. at 6 ("As alleged, every contract ultimately was for acquisition of personal services in excess of [d]efendant's statutory and regulatory authority, which is strictly prohibited."). Further, plaintiffs do not allege that the court's prior decision rested upon a manifest error of law or mistake of fact, let alone allege that such error was patently obvious. Rather, the allegations are based on the same facts as plaintiffs' previously-dismissed complaint, couched in a different legal framework.

The one new element plaintiffs introduce, concerning work performed during periods of time when they were not subject to any express contract with the Broadcasting Board, is unavailing because this allegation could have been made during the prior proceedings. *See General Elec. Co. v. United States*, 416 F.2d 1320, 1322 (Ct. Cl. 1969) (explaining the "general principle" that "requests for post-decision relief will be rejected if the plaintiff has, without sufficient excuse, failed to make his point prior to the decision"). Notably, plaintiffs have not alleged that new evidence regarding this prior work only became available after the court's entry of judgment. In sum, plaintiffs have not demonstrated the existence of extraordinary circumstances to support reconsideration of the court's judgment if the governing criteria turn on RCFC 59(e), standing alone.

7

### B. Motion to Amend Complaint Pursuant to RCFC 15(a)

If plaintiffs' motions are to be adjudged under RCFC 15(a), plaintiffs' second amended complaint must withstand challenges based on jurisdiction and adequacy of plausible factual allegations pursuant to the standards of RCFC 12(b)(1) and 12(b)(6). The government argues that plaintiffs' amended complaint fails to cure the jurisdictional defects identified by the court in its original opinion, and that plaintiffs are "attempt[ing] to assert new claims that are not supported by their allegations." Def.'s Opp'n to Pls.' Mot. for Leave to File Second Am. Compl. ("Def.'s Opp'n") at 3, ECF No. 32. Although not specifically identified as such, the government appears to argue that plaintiffs' proposed amendments are futile. "When a party faces the possibility of being denied leave to amend on the ground of futility, that party must demonstrate that its pleading states a claim on which relief could be granted. . . ." *Kemin Foods, L.C. v. Pigmentos Vegetales del Centro S.A. de C.V.*, 464 F.3d 1339, 1354-55 (Fed. Cir. 2006). That in effect is the situation before the court, and plaintiffs have recognized as much and responded accordingly in their reply and at the hearing.

To determine whether the proposed amendments are futile, the court must examine whether they "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). The court must "draw on its judicial experience and common sense" when evaluating whether a claimed right to relief is plausible. *Id.* at 679. In doing so, the court "must accept as true the complaint's undisputed factual allegations and should construe them in a light most favorable to the plaintiff." *Cambridge v. United States*, 558 F.3d 1331, 1335 (Fed. Cir. 2009) (citing *Papasan v. Allain*, 478 U.S. 265, 283 (1986); *Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed. Cir. 1991)). The court is not, however, similarly bound to accept legal conclusions contained in the same allegations. *Twombly*, 550 U.S. at 555.

Additionally, an amendment is futile, and thus leave to amend should be denied, when the court lacks subject matter jurisdiction over the proposed claims. *See Nesselrode v. United States*, 127 Fed. Cl. 421, 434 (2016); *see also Jackson*, __ Fed. Appx. at __, 2016 WL 6518563, at *3 (motion to amend properly denied when plaintiff "proposed no specific amendments that would cure the [previously identified] deficiencies" and the proposed amendments were outside the scope of the court's jurisdiction or time-barred). Jurisdiction in this case depends upon the Tucker Act, 28 U.S.C. § 1491, which states that this court "shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). In contract claims against the United States, "[t]he general rule is that so long as the plaintiffs have made a non-frivolous claim that they are entitled to money from the United States . . . because they have a contract right, this court has jurisdiction to settle the dispute." *Anchor Tank Lines, LLC v. United States*, 127 Fed. Cl. 484, 493 (2016) (internal quotation marks and citations omitted); *see also Engage Learning, Inc., v. Salazar*, 660 F.3d 1346, 1353 (Fed. Cir. 2011) ("[J]urisdiction under [the Tucker Act] requires no more than a non-frivolous *allegation* of a contract with the government.") (emphasis in original) (internal citations omitted).

*1. Count II: Breach of Express Contract.*

In Count II of the proposed second amended complaint, plaintiffs allege that the Broadcasting Board breached its express contracts with plaintiffs by requiring them to perform personal services while only compensating plaintiffs at the rates specified in their contracts. Specifically, plaintiffs assert that although their contracts classified them as "independent contractors" providing "non[]personal services," the Board denied them the rights and benefits enjoyed by independent contractors, such as working from a preferred location, using their own equipment, and working without direct federal supervision. [Proposed] Second Am. Compl. ¶¶ 123-29. They aver that the Board paid them lower salaries, as generally afforded to independent contractors, while essentially treating them as federal employees without paying them at federal salary rates. [Proposed] Second Am. Compl. ¶¶ 124-29. Plaintiffs also repeatedly assert that the Board required them to perform "personal services" outside the scope of their express contracts, alleging that they were subject to government supervision and control in the performance of their contractual duties. *See* [Proposed] Second Am. Compl. ¶ 130; Pls.' Mot. at 6; Pls.' Reply at 10-11. The government argues in response that plaintiffs fail to state a viable claim for breach of express contract because the terms of the contracts did not provide for the alleged "rights and benefits" plaintiffs claim were denied to them, but rather explicitly stated that plaintiffs had to, for example, work at a federal facility and use equipment provided by the government. Def.'s Opp'n at 3-4.

To state a claim for breach of contract, plaintiffs must allege "(1) a valid contract between the parties, (2) an obligation or duty arising out of the contract, (3) a breach of that duty, and (4) damages caused by the breach." *San Carlos Irrigation & Drainage Dist. v. United States*, 877 F.2d 957, 959 (Fed. Cir. 1989). For the purposes of Count II, plaintiffs concede that their contracts with the Broadcasting Board are valid and enforceable. [Proposed] Second Am. Compl. ¶ 123. Accordingly, the court will look to the Board's duties arising out of the contracts, based on the express scope of the contracts, to determine whether such duties have been breached. The scope of an express contract is interpreted in light of its plain language. *Jowett v. United States*, 234 F.3d 1365, 1368 (Fed. Cir. 2000) (citing *McAbee Constr., Inc. v. United States*, 97 F.3d 1431, 1435 (Fed. Cir. 1996)). If the terms of the contract are unambiguous, the plain meaning controls. *Barron Bancshares, Inc. v. United States*, 366 F.3d 1360, 1375 (Fed. Cir. 2004). The court shall also read the contract as a whole and "endeavor to give a reasonable meaning to all its provisions." *Dick Pacific/GHEMM, JV ex rel. W.A. Bottling Co. v. United States*, 87 Fed. Cl. 113, 125 (2009) (citing *Jowett*, 234 F.3d at 1368).

While plaintiffs have provided an incomplete set of their contracts to the court, the plain language of the contracts that have been provided contradicts plaintiffs' allegations that they were entitled to certain "rights and benefits" as independent contractors with the Broadcasting Board. For example, the proposed second amended complaint alleges that plaintiffs were deprived of the ability to work from preferred locations and with their own equipment. *See* [Proposed] Second Am. Compl. ¶ 129. However, the express contracts explicitly state that the contractors must work from a Broadcasting Board location and perform their jobs using government equipment and resources. *See, e.g.*, [Proposed] Second Am. Compl. Ex. B, at 168 ("Contractor [Mark Peach] shall provide general studio lighting services utilizing [g]overnment equipment *on-site* at the office of the IBB technical facilities.") (emphasis added); [Proposed] Second Am. Compl. Ex. C, at 159-60 ("The [c]ontractor [Seh Ahn Lee] shall perform the following work at the IBB Voice of America Headquarters Building . . . unless otherwise

9

mutually agreed to by the Contracting Officer. . . . The [g]overnment will furnish office space . . . . expendable supplies, and equipment (e.g., audio recording device, PC with LAN connection, fax and telephone as appropriate) *solely* for the [c]ontractor's use while performing the work prescribed herein.") (emphasis in original).  The Board did not breach the express terms of the contract by requiring plaintiffs to perform their work at the locations and with the equipment expressly specified in the contract, even if these are not the usual terms of independent contracting under the common law.[2]

The complaint also does not plausibly allege that plaintiffs' express contracts were breached because of "direct federal supervision."  [Proposed] Second Am. Compl. ¶ 129.  The sample contracts are identified as "nonpersonal services contracts" as defined in 48 C.F.R. § 37.101.  In relevant part, the contracts provide:

> It is, therefore, understood and agreed that the [c]ontractor and/or the [c]ontractor's employee: (1) Shall perform the services specified herein as independent contractors, not as employees of the [g]overnment; (2) Shall be responsible for their own management and administration of the work required and bear sole responsibility for complying with any and all technical, schedule, or financial requirements or constraints attendant to the performance of this contract; (3) *Shall be free from supervision or control by any [g]overnment employee with respect to the manner or method of performance of the services specified; but (4) Shall, pursuant to the [g]overnment's right and obligation to inspect, accept, or reject the work, comply with such general direction of the Contracting Officer or the duly Authorized Representative of the Contracting Officer (AR/CO) as is necessary to ensure accomplishment of the contract objective.*

[Proposed] Second Am. Compl. Ex. B, at 173 (emphasis added); *see also* [Proposed] Second Am. Compl. Ex. C, at 169, 189 (same).  The contracts also provide for the Board to regularly review the contractors' work to ensure compliance with the terms of the contracts and the requirements of the agency.  *See* [Proposed] Second Am. Compl. Ex. B, at 168 ("The quality and efficiency of the services performed by the contractor shall be reviewed on a regular basis to ensure the contractor is meeting the requirements of the [a]gency."); [Proposed] Second Am. Compl. Ex. C, at 161, 182 (same).  In their proposed second amended complaint, plaintiffs state in broad terms that they performed personal services under "direct federal supervision" without providing specific allegations regarding the scope and extent of that supervision.  By the plain language of the contracts, the Board had a duty to supervise and review contractors' work to

---

[2]Under the common law,

> To decide whether someone is an "employee" who can sue the agency [for discrimination under Title VII of the Civil Rights Act or the Rehabilitation Act] or an independent contractor who should be suing someone else, the D.C. Circuit has – helpfully – come up with a twelve-factor test.  *See Spirides* [*v. Reinhardt*, 613 F.2d 826, 831-32 (D.C. Cir. 1979)].  The "most important factor" is "the extent of the employer's right to control the 'means and manner' of the worker's performance." [*Spirides*, 613 F.2d] at 831.

*Almutairi v. International Broad. Bureau*, 928 F. Supp. 2d 219, 229-30 (D.D.C. 2013).

ensure that the contractors were fulfilling their obligations under the contracts. By reciting only general allegations of direct supervision, plaintiffs have not plausibly alleged that the Board's supervision of plaintiffs was so pervasive and extensive as to constitute direction, supervision, or control regarding plaintiffs' "manner or method of performance" in breach of the express contract terms, rather than being within the scope of review and compliance commensurate with the government's right and obligation to inspect and accept or reject contractors' work in accord with the contractors' provision of nonpersonal services.

In sum, plaintiffs have not alleged that the work they performed was outside the scope of their express contracts. Thus, plaintiffs have failed to state a claim for breach of express contract in their second amended complaint, and their motion to amend does not suffice with respect to Count II.

*2. Count III: Breach of Implied Contract.*

In Count III, plaintiffs allege that their contracts were issued outside of the Broadcasting Board's statutory authority to award personal service contracts. *See* [Proposed] Second Am. Compl. ¶¶ 134-38. Plaintiffs assert that this violation renders their contracts "void or . . . voidable, in whole or in part." [Proposed] Second Am. Compl. ¶ 138. Plaintiffs further allege that they provided services to the Broadcasting Board "at various times" without any express contracts because their contracts had lapsed. [Proposed] Second Am. Compl. ¶ 141. Plaintiffs request that the court "reform the contracts to correct illegal terms" by reading in implied terms under which plaintiffs provided personal services to the Board in exchange for compensation at "the fair market value of their services." [Proposed] Second Am. Compl. ¶¶ 140, 143-44.

First, plaintiffs' contracts are not void.[3] The relevant provision that sets forth the Board's authority to issue contracts is 48 C.F.R. § 37.104(b), which states that "[a]gencies shall not award personal services contracts unless specifically authorized by statute." The Broadcasting Board is authorized by statute to award 60 personal service contracts. *See Lee*, 127 Fed. Cl. at 738 n.2 and accompanying text (citing OIG Report at 10 & n.13; 22 U.S.C. § 6206 note). Plaintiffs allege that the Board exceeded this authorization, which thus rendered the contracts void, because of the OIG's finding that the Board "award[ed] an overwhelming majority of all services contracts as nonpersonal services contracts, though they were personal in nature." OIG Report at 15; *see also* [Proposed] Second Am. Compl. ¶ 56.

The court is generally reluctant to void a contract with the government on the basis of the government's noncompliance with a statutory or regulatory requirement. *See American Tel. & Tel. Co. v. United States*, 177 F.3d 1368, 1376 (Fed. Cir. 1999). The court will ordinarily defer to the judgment of the government in issuing the contract and find it valid, "impos[ing] the binding stamp of nullity only when the illegality is plain." *John Reiner & Co. v. United States*, 163 Ct. Cl. 381, 386 (1963); *see also Springfield Parcel C, LLC v. United States*, 124 Fed. Cl. 163, 183-90 (2015) (holding in a bid protest that a lease awarded by a federal agency was void

---

[3]The government asserts that the court held that plaintiffs' contracts were not void in its prior opinion. Def.'s Opp'n at 5. In fact, the opinion only mentions the issue in passing when holding that the court lacked jurisdiction over plaintiffs' *quantum meruit* claim. *See Lee*, 127 Fed. Cl. at 745-46. The court did not address this issue with respect to plaintiffs' claim for breach of implied contract, and thus will consider it in full here.

because it exceeded an explicit congressional limitation legitimated by statute).  In the circumstances at hand, the court is especially reluctant to void plaintiffs' contracts because the Broadcasting Board had statutory authority to issue a certain number of personal service contracts.  According to the OIG Report, during the evaluated time period (fiscal years 2011 and 2012), 44 contracts were "appropriately classified as [personal service contracts]," while 660 "may have been personal in nature."  OIG Report at 10, 75.  Beyond the 44 contracts expressly classified for personal services, the Board still had the authority to issue up to 16 additional personal service contracts.  If plaintiffs' contracts were in fact for personal services, it is impossible for the court to determine whether those particular contracts fell within or outside the statutory authorization.  Both assessments are reasonable.  The text of the authorization states that up to 60 people may be "employed at any one time as personal services contractors under the program."  22 U.S.C. § 6206 note, subsection (b)(4).  The statute does not, however, specify that the express contracts must be labeled for personal services; it merely states that 60 people may work as personal service contractors.  Thus, even though plaintiffs' contracts were not explicitly labeled for personal services, they could conceptually be included within the scope of the authorization if plaintiffs did in fact provide personal services to the Board.  *See John Reiner & Co.*, 163 Ct. Cl. at 386 ("If the contracting officer has viewed the award as lawful, and it is reasonable to take that position under the legislation and regulations, the court should normally follow suit.").

Even if plaintiffs' contracts fell outside the Broadcasting Board's authorization to issue personal services contracts, the contracts are not necessarily invalid.  As the Federal Circuit stated in *American Tel. & Tel.*:

> Invalidation of the contract is not a necessary consequence when a statute or regulation has been contravened, but must be considered in light of the statutory or regulatory purpose, with recognition of the strong policy of supporting the integrity of contracts made by and with the United States.  In *United States v. Mississippi Valley Generating Co.*, 364 U.S. 520 (1961), the Court explained that when a statute "does not specifically provide for the invalidation of contracts which are made in violation of [its provisions]" the court shall inquire "whether the sanction of nonenforcement is consistent with and essential to effectuating the public policy embodied in [the statute]."  *Id.* at 563.  Thus the policy underlying the enactment must be considered in determining the remedy for its violation, when the statute itself does not announce the sanction of contract invalidity.

177 F.3d at 1374.  Neither 22 U.S.C. § 6206 note nor 48 C.F.R. § 37.104 expressly provides for the invalidation of contracts issued outside the scope of the authorization.  Thus, the court looks to policy concerns underlying the invalidation of plaintiffs' contracts.

The legislative history of 22 U.S.C. § 6206 note does not indicate that Congress intended that personal service contracts be declared void if issued beyond the scope of the authorization.  *See Alabama Rural Fire Ins. Co. v. United States*, 215 Ct. Cl. 442, 454 (1978) ("[I]llegality may be proved with reference to legislative history. . . .").  The purpose of the authorization was to "provide greater flexibility to the Board in its employment practices."  H.R. Rep. No. 107-57, at 75 (2001).  Although the Board's authority to issue personal service contracts is "limited," Congress meant to allow the Board to hire contractors quickly and easily to satisfy certain broadcasting needs.  *Id.*  Meeting the Board's hiring needs appears to take precedence over

maintaining a strict limit on personal service contracts.  The flexibility afforded to the Board by the authorization therefore indicates that contracts for personal services that otherwise would be valid but are issued beyond the 60 contract limit should not be deemed void.

Further, as a general matter, "invalidation of a contract after it has been fully performed is not favored," particularly where the government is alleged to have violated a statutory or regulatory requirement.  *American Tel. & Tel.*, 177 F.3d at 1375; *see also United Pac. Ins. Co. v. United States*, 68 Fed. Cl. 152, 159 (2005) (refusing to declare a fully-performed contract invalid for violating regulatory oversight procedures because invalidation was "not essential to [the] public policy" of the statutes and regulations at issue).  Plaintiffs have been contractors with the Broadcasting Board for several years under multiple contracts and contract renewals.  Most of these contracts have been fully performed – plaintiffs have provided their services and the Board has paid them at the rate specified in the contracts.  *See American Tel. & Tel.*, 177 F.3d at 1376 ("It is not before us to decide whether either party to the . . . contract could have voided the contract early in its life and without penalty; the contract was performed for over five years, with no record suggestion from either party that because of [the statutory requirement at issue] there was no contract.").  This counsels against the court voiding plaintiffs' already-performed contracts, particularly in light of the aforementioned policy to provide the Board with flexibility in meeting its staffing needs.

Because plaintiffs have not sufficiently alleged that their contracts are retroactively void, the court lacks jurisdiction over their claim for breach of implied contract.  As explained in the court's prior opinion in this case, "[t]he existence of an express contract precludes the existence of an implied contract dealing with the same subject, unless the implied contract is entirely unrelated to the express contract." *Lee*, 127 Fed. Cl at 745 (quoting *Atlas Corp.*, 895 F.2d at 754-56); *see also Algonac Mfg. Co.*, 428 F.2d at 1255 ("[A]s a general rule there can be no implied contract where there is an express contract between the parties covering the same subject.").  Because the express contracts are not void, their terms control.  Here, plaintiffs are essentially reasserting their argument that their express contracts "*should* have been styled as personal service contracts, in which case plaintiffs would have been entitled to compensation in the same manner as federal employees." *Lee*, 127 Fed. Cl. at 745 (emphasis in original).  Plaintiffs also have not alleged that they performed additional work that went "beyond what was contemplated in their express contracts," which could establish a basis for an "entirely unrelated" implied contract.  *Id.* (citing *Atlas Corp.*, 895 F.2d at 754).  Thus, as held in the court's prior decision, the court cannot exercise jurisdiction over a claim for breach of implied contract because the terms of plaintiffs' express contracts control.

Essentially, plaintiffs appear to be asking the court to reform their contracts to conform to the requirements of personal service contracts, which is improper in this circumstance.  The court has no juridical power to replace the terms of the express contracts with judicially crafted implied personal service contract terms.  "The remedy of reformation is a narrow one, bringing a contract into conformity with 'the true agreement of the parties on which there was a meeting of the minds.'" *Northrop Grumman Corp. v. United States*, 47 Fed. Cl. 20, 41 (2000) (quoting *American President Lines, Ltd. v. United States*, 821 F.2d 1571, 1582 (Fed. Cir. 1987)).  The court shall not "inject[] itself into the contracting process" to fashion an agreement it deems appropriate, or for which a party unilaterally advocates.  *Id.* (citing *Atlas Corp.*, 895 F.2d at 749, in turn citing *American President Lines*, 821 F.2d at 1582).  Plaintiffs have not alleged that they had a "meeting of the minds" with the Broadcasting Board beyond the express agreements for

nonpersonal services.  Rather, plaintiffs are asking the court to substitute their preferred terms (*i.e.*, provision of personal services in exchange for fair market value) for the actual terms of the express contracts that have been deemed by the court not to be void.  Such reformation is improper.

Reformation of plaintiffs' contracts is also improper under the so-called *Christian* doctrine.  *See S.J. Amoroso Const. Co., Inc. v. United States*, 12 F.3d 1072, 1075 (Fed. Cir. 1993) (citing *G.L. Christian & Assocs. v. United States*, 312 F.2d 418 (Ct. Cl. 1963), *mot. for reh'g and reargument denied*, 320 F.2d 345 (Ct. Cl. 1963)).  Pursuant to the *Christian* doctrine, "a mandatory contract clause that expresses a significant or deeply ingrained strand of public procurement policy is considered to be included in a contract [under the FAR] by operation of law."  *Id.* (citations omitted).  Thus, when improper FAR terms are incorporated into a contract, the correct FAR terms control even if they are not expressly stated in the contractual text.  *See Bay Cty., Fla. v. United States*, 112 Fed. Cl. 195, 202 (2013) (citing *S.J. Amoroso*, 12 F.3d at 1075; *G.L. Christian & Assocs.*, 312 F.2d at 426), *aff'd*, 796 F.3d 1369 (Fed. Cir. 2015).  Whether the *Christian* doctrine applies "turns not on whether the clause was intentionally or inadvertently omitted, but on whether procurement policies are being 'avoided or evaded (deliberately or negligently) by lesser officials.'"  *S.J. Amoroso*, 12 F.3d at 1075 (quoting *G.L. Christian & Assocs.*, 320 F.2d at 351).  In *Bay County*, for example, the court substituted a mandatory FAR clause into a contract in place of an improper clause that was an "impermissible deviation" from the correct FAR provision.  112 Fed. Cl. at 203.  Here, without expressly stating it as such, plaintiffs basically seek to have the FAR provisions regarding personal service contracts incorporated into their contracts with the Board because of the Board's alleged deviation from FAR § 37.104(b) in exceeding the scope of its authority to issue personal service contracts.  As previously explained, however, plaintiffs have not sufficiently alleged that their express contracts violated the FAR (*i.e.*, for exceeding the Board's authorization to issue personal service contracts) or that the Board treated plaintiffs as personal service contractors in breach of the express contracts.  Consequently, plaintiffs have not proven that personal service terms are "mandatory" or that the terms actually contained within the contracts significantly deviate from plaintiffs' preferred terms in light of the work performed and compensation received by plaintiffs.  Thus, plaintiffs have shown no basis upon which the court could or should reform the contract, and the *Christian* doctrine does not apply.

Finally, plaintiffs also fail to state a claim for breach of implied contract with regard to the gaps between express contract periods.  Plaintiffs allege that these gaps occurred because of, "among other reasons, the lapse of a prior contract or the failure to perfect a new contract during periods when work was proceeding."  [Proposed] Second Am. Compl. ¶ 141.  Urging that they were not parties to any contract during these periods of time, plaintiffs contend that they should be compensated for the fair market value of personal services provided.  [Proposed] Second Am. Compl. ¶ 141.  This contention is not persuasive.  Based on the course of dealing between the parties, the terms of the express contracts control during the gaps between express contract periods.  When parties to a contract continue performance after the contract period has expired without an express agreement to renew or extend the contract, the court may infer that the parties intended to renew the contract under the same terms for a similar period of time.  *See* 1 Arthur L. Corbin, et al., *Corbin on Contracts* § 1.19 (rev. ed. 1993).  Although plaintiffs have provided an incomplete set of contracts to the court, it appears that the terms of plaintiffs' contracts did not materially change from period to period.  *See, e.g.*, [Proposed] Second Am. Compl. Ex. C, at 3-261 (selected contracting documents between plaintiff Lee and the Broadcasting Board for

contract periods between 2008 and 2015).  Thus, the court may reasonably infer that the terms of the expired express contracts governed the parties' performance during the gap periods.  Because the court has concluded that these express contracts are not invalid, they supply the terms that govern during the gap periods.  Plaintiffs have not alleged that they performed services other than those specified in the express contracts during the gap periods, and have not alleged that the Broadcasting Board did not continue to pay them at contract rates.  Plaintiffs thus have failed to allege that the Board breached implied-in-fact contracts during the gap periods.

In sum, plaintiffs have failed to state a claim for breach of implied contract.  Thus, their motion to amend is denied with respect to Count III.

### 3. Count IV: Quantum Meruit.

Plaintiffs' alternate claim for damages under the theory of *quantum meruit* in Count IV restates that their contracts are void or voidable because the contracts were issued outside of the Broadcasting Board's authority to award contracts for personal services.  [Proposed] Second Am. Compl. ¶¶ 149-50.  Plaintiffs also re-allege that they performed work at times when they were not party to any contract with the Board.  [Proposed] Second Am. Compl. ¶ 154.  Thus, plaintiffs claim that they are entitled to *quantum meruit* relief for the provision of personal services under void contracts or when they were not party to any contract, seeking as damages the difference between the fair market value of personal services and the payments made to plaintiffs under the express contract terms.  [Proposed] Second Am. Compl. ¶¶ 155-59.

"A recovery in *quantum meruit* is based on an implied-in-law contract.  That is, a contract in which there is no actual agreement between the parties, but the law imposes a duty in order to prevent injustice." *International Data Prods. Corp. v. United States*, 492 F.3d 1317, 1325 (Fed. Cir. 2007).  As this court noted in its prior opinion, "[t]he Court of Federal Claims generally does not have jurisdiction over *quantum meruit* or implied-in-law contract claims." *Lee*, 127 Fed. Cl. at 745 (citing *International Data Prods*, 492 F.3d at 1325; *Trauma Serv. Grp., Ltd. v. United States*, 33 Fed. Cl. 426, 432 (1995), *aff'd*, 104 F.3d 1321 (Fed. Cir. 1997)).  The limited exception to this rule identified by the Federal Circuit allows for recovery under a *quantum meruit* or *quantum valebant* theory[4] "when a contractor provided goods or services to the government in good faith under an express contract, but that contract was later rescinded for invalidity." *Id.* at 745-46 (citing *Amdahl*, 786 F.2d at 393).  As the court held in its prior opinion, this exception is inapplicable to this case.  The court has already explained at length that plaintiffs' express contracts are not void, and plaintiffs have not alleged that they were not paid the contract rate in full.  *See International Data Prods.*, 492 F.3d at 1325-26 (finding that the *Amdahl* exception did not apply where a contract was "neither invalid nor unenforceable"); *United Pac. Ins. Co. v. United States*, 464 F.3d 1325, 1333-34 (Fed. Cir. 2006) (rejecting plaintiffs' reliance on *Amdahl* because the government had paid them the full amount due under the contract at issue).  Further, the court has noted that the terms of the express contracts control the parties' performance during the gap periods.  Since plaintiffs have not alleged that they were

[4]*Quantum valebant* relief, meaning "as much as it was worth," generally is awarded for implied-in-fact contracts regarding goods, while *quantum meruit* relief, meaning "as much as he merited," is awarded for implied-in-fact contracts for either goods or services.  *Amdahl*, 786 F.2d at 393 n.6 (citing *Urban Data Systems, Inc. v. United States.*, 699 F.2d 1147, 1154-55 n.8 (Fed. Cir. 1983)).

not paid the full contract rate during these periods as well, they cannot sustain a plausible claim for additional payment under a *quantum meruit* theory. Therefore, the court does not have jurisdiction over plaintiffs' amended *quantum meruit* claim, and their motion to amend must be denied with regard to Count IV.

### CONCLUSION

For the reasons stated, plaintiffs' motions for reconsideration and for leave to file a second amended complaint are DENIED.

It is so **ORDERED**.

s/ Charles F. Lettow
Charles F. Lettow
Judge